IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**PAUL MICHAEL ALLEN**,

        Plaintiff,

vs.

**MICHAEL J. ASTRUE**, Commissioner of Social Security,

        Defendant.

Civil Case No. 3:10-CV-01377-KI

OPINION AND ORDER

Linda S. Ziskin
Attorney at Law
P.O. Box 2237
Lake Oswego, Oregon  97035

Richard A. Sly
Attorney at Law
1001 S.W. 5th Avenue, Suite 310
Portland, Oregon  97204

      Attorneys for Plaintiff

S. Amanda Marshall
United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, Oregon  97204

Benjamin J. Groebner
Social Security Administation
Office of General Counsel
701 Fifth Avenue, Suite 2900
M/S 221A
Seattle, Washington  98104-1075

        Attorneys for Defendant

KING, Judge:

Plaintiff Paul Michael Allen brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I affirm the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the Administrative Law Judge ("ALJ"). The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be

disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, the ALJ makes a finding of "not disabled" and disability benefits are denied. 20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is unable to perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2004) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that Allen had severe impairments of carpal tunnel syndrome, degenerative disc disease of the spine, a groin injury, depressive disorder, and schizophrenia/schizoid personality traits. The ALJ also found that these impairments, either

Page 4 - OPINION AND ORDER

singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  After considering the evidence, the ALJ found that Allen had the residual functional capacity to perform light work, to stand and/or walk for six hours in an eight-hour workday, and to sit for six hours in an eight-hour workday.  The ALJ limited Allen to no work that requires consistent,[1] repetitive use of the upper left extremity; no hazards; only occasional use of a bicycle, if at all; simple tasks; and occasional interaction with the public.  Based on vocational expert ("VE") testimony, the ALJ found that Allen could work as a housekeeping cleaner or small products assembler and thus was not disabled under the Act.

## FACTS

Before the current applications, Allen filed unsuccessful applications for benefits in December 2003 and April 2004.  Because of the procedural history of these applications, the January 19, 2006 denial of the 2004 application acts as res judicata.  Thus, as a matter of law, Allen cannot receive benefits for the period before January 20, 2006.

Allen, who was 52 years old at the time of the ALJ's decision at issue, has a high school education and work experience as a welder, laundry worker, dock worker, and parking lot attendant.  Allen claims he has been disabled since September 30, 2000 due to degenerative disc disease, carpal tunnel syndrome, seizures, a groin injury, schizoid and paranoid personality traits, a cognitive disorder, and depression.  Allen complains of pain in his hands, his groin, and his back.  He treats the pain with a muscle relaxer and ibuprofen.

---

[1] This word is the basis of an issue discussed later in my opinion.

Allen walks two to three hours a day, covering about fifteen blocks, collecting bottles to claim the deposit.  In his last job, Allen worked half-time as a parking lot attendant for about a year in 2004 to 2005.

## DISCUSSION

I.    Step Two Findings

Allen contends the ALJ committed reversible error by failing to make any severity findings for Allen's diagnoses of cognitive disorder and seizures.

The Commissioner argues Allen has not shown that either his cognitive disorder or his seizures resulted in additional limitations which the ALJ did not consider.

The failure to list an impairment as a severe impairment is a harmless error if, in determining the claimant's residual functional capacity, the ALJ considered any limitations caused by the impairment.  Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

According to the Commissioner, the state agency physicians considered Allen's seizures when assessing his limitations, and the ALJ's residual functional capacity corresponded to the state agency physicians' opinions.

On January 5, 2004, Allen's primary care physician, Dr. Martin Skinner, discussed Allen's "undiagnosed episodic problem, which is variously described as dizziness, fuzziness, [or] unsteadiness," but did not specify any limitations.  Tr. 460.  Dr. Skinner wrote eleven other chart notes dated January 31, 2006 through October 22, 2006 but did not mention these symptoms at all.  On July 7, 2006, the state agency physician reviewed Allen's records, noted his history of atypical seizures, and limited Allen to "avoid even moderate exposure" to hazards.  Tr. 392.  The

ALJ adopted this limitation. No doctors in the record stated a further physical limitation because of the seizures.

Turning to the cognitive disorder and any mental limitations caused by the seizures, the Commissioner contends the state agency psychologists considered the October 1, 2003 diagnosis of the consulting neuropsychologist, David Gostnell, Ph.D., in assessing Allen's mental restrictions. Dr. Gostnell limited Allen to work which does not involve frequent social interactions, intimate working relationships with large numbers of people, and dealing with the public. He also noted Allen's cognitive impairment; Allen has a Full Scale IQ of 84. On July 7, 2006, the state agency psychologist limited Allen to short and simple instructions and procedures, multi-step instructions if they are simple, and only brief, incidental contact with the public. The ALJ's limitations were in accord: simple tasks and occasional interaction with the public.

Any error committed by the ALJ in failing to name Allen's cognitive disorder and seizures as severe impairments was harmless because the ALJ adopted all limitations resulting from these impairments which are supported by the record.

Allen further argues the ALJ failed to use the special technique for evaluating mental impairments, as required by 20 C.F.R. § 404.1520a. At the ALJ level, that regulation requires the written decision to incorporate findings and conclusions based on the technique, including a specific finding on the degree of limitation in each of the functional areas of activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. The state agency psychologist did this in the Psychiatric Review Technique form dated July 7, 2006. Although the ALJ did not complete a form, his opinion stated that Allen had mild,

Page 7 - OPINION AND ORDER

moderate, and moderate limitations in the first three areas, respectively, and no episodes of decompensation. The ALJ complied with the regulation.

II.     Opinion of Dr. Martin Skinner

Allen argues the ALJ improperly rejected the opinion of his treating doctor, Dr. Martin Skinner. Allen contends the ALJ's stated reasons are inadequate to meet the clear and convincing standard, and that the arguments now provided by the Commissioner are post hoc arguments which the court should reject.

The Commissioner contends Dr. Skinner's opinion that Allen is moderately disabled is an opinion on an issue reserved to the Commissioner. Because the statement is not a medical opinion, the Commissioner argues the ALJ did not err by finding it of limited utility.

Dr. Skinner's chart note dated October 22, 2006 states:

> This 50-year-old man returns concerned about his disability claim for his back discomfort. . . . At this point, his only financial resources are The Oregon Plan and food stamps. He is not able to work at any particular job for any length of time because of his back discomfort. He still has some trouble with his hands and has difficulty being able to focus and concentrate because of his mental disorder. In addition to being moderately disabled, he is having trouble getting, and is justifiably concerned about getting, some sort of assistance. At this point, I have no way to seriously contradict the IME report . . . .

Tr. 403.

The ALJ gave Dr. Skinner's opinion little weight for two reasons: (1) it was not clear that Dr. Skinner was familiar with the definition of "disabled" contained in the Act; and (2) in light of the physical examination results, the ALJ concluded that Dr. Skinner based his opinion largely on Allen's subjective reports. The ALJ found that Allen's subjective complaints were not

credible to the extent that they were inconsistent with the residual functional capacity the ALJ assessed for him.  Allen does not appeal the ALJ's credibility determination.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  Id. (treating physician); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  Widmark, 454 F.3d at 1066 n.2.  Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

A physician's opinion of disability may be rejected if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible."  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

A medical source's opinion that a claimant is disabled is not treated as a medical opinion because this is an issue reserved for the Commissioner.  20 C.F.R. § 404.1527(e).  I agree with the ALJ that Dr. Skinner's use of the term "moderately disabled" indicates that the doctor is not

Page 9 - OPINION AND ORDER

familiar with the meaning of "disabled" under the Act because there are no levels of disability within the Act; a claimant is either "disabled" or "not disabled."  When Dr. Skinner applied labels to Allen's functionality, rather than providing specific limitations on Allen's ability to work, the doctor digressed into an area reserved for the Commissioner which is not entitled to the weight given a medical opinion.

It is also true that Allen's physical examination results do not support a finding of limitations prohibiting all work.  Some of Dr. Skinner's chart notes for the time at issue indicate that Allen's back was better.  See Tr. 421.  When assessing Allen's credibility, the ALJ noted that Allen had not received the kind of treatment one would expect a totally disabled individual to seek out.  In particular, no doctor had prescribed any narcotic pain medication for Allen.

In sum, the ALJ gave specific and legitimate reasons supported by substantial evidence in the record to give little weight to Dr. Skinner's opinion.

Allen also contends the ALJ's reasoning does not meet the standard set forth in SSR 96-2p.  Under that Ruling, a treating source's medical opinion is given controlling weight if it is well-supported and not inconsistent with other substantial evidence in the record.  As explained above, the ALJ correctly determined Dr. Skinner's opinion that Allen was moderately disabled was not a medical opinion.  Furthermore, the opinion is inconsistent with some of Dr. Skinner's own records and with the opinion of the state agency doctors.  The ALJ did not violate SSR 96-2p.

III.      Duty to Develop the Record

Allen contends the ALJ did not fully and fairly develop the record when he failed to contact Allen's treating physician, Dr. Skinner, after speculating what Dr. Skinner might have meant in his use of the term "disabled."

The Commissioner contends that Dr. Skinner's opinion was not ambiguous and did not trigger the ALJ's duty to contact him for clarification.

A Social Security ALJ has an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation omitted). The duty is heightened if a claimant is unrepresented or is mentally ill and cannot protect his own interests.

The ALJ must supplement the record if: (1) there is ambiguous evidence; (2) the ALJ finds that the record is inadequate; or (3) the ALJ relies on an expert's conclusion that the evidence is ambiguous. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).

Here, Allen was represented by counsel at the hearing. The ALJ had no duty to recontact Dr. Skinner because the opinion was on an issue reserved to the Commissioner.

IV.      Disability under the Medical Vocational Guidelines

Allen argues the ALJ failed to properly apply the Medical Vocational Guidelines, which mandate a finding of disability when used properly in his case. Under the Guidelines, Allen claims his fact pattern falls between a finding of "not disabled" for a claimant able to perform the full range of light exertional level work and a finding of "disabled" for a claimant limited to sedentary work. Because the ALJ limited Allen to less than the full range of light work due to the limitations of his dominant left hand, Allen contends the ALJ must address whether the

Page 11 - OPINION AND ORDER

remaining occupational base is closer to the occupational base for the sedentary or the light Guideline rule. Allen notes the sedentary Guideline rule contemplates 200 occupations in its finding of "disabled." He argues the ALJ erred in finding him not disabled based on the ability to perform only two specific occupations.

The Commissioner contends the ALJ fulfilled his duty by receiving VE testimony concerning work available for someone with Allen's residual functional capacity. Moreover, the Commissioner claims that identifying a single occupation is adequate for a finding of "not disabled" if there are a significant number of jobs available in it.

The Medical Vocational Guidelines, also known as "the grids," are used to determine if substantial gainful work exists for claimants with substantially uniform levels of impairment. When the grids do not adequately take into account a claimant's abilities and limitations, however, they may be used only as a framework and a vocational expert must be consulted. Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002).

SSR 83-12 states, in relevant part:

> 2. If the exertional level falls between two rules which direct opposite conclusions, i.e., "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:
>
> a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>
> b. On the other hand, if the exertional capacity is significantly reduced in terms of the regularity definition, it could indicate little more than the occupational base for the lower rule and could justify [a] finding of "Disabled."
>
> c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are

>involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability.  Accordingly, [VE] assistance is advisable for these types of cases.

The ALJ fully complied with SSR 83-12 by relying on VE testimony he took at the hearing.  See Moore v. Apfel, 216 F.3d 864, 870-71 (9th Cir. 2000) ("SSR 83-12 does not mandate a finding of 'disabled.'  Instead, it mandates the use of a VE, which was exactly the process used in this instance.").

I am also unpersuaded by Allen's argument that the ALJ erred by finding him not disabled based on the ability to perform only two occupations.  Under the regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in *one or more* occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications."  20 C.F.R. § 404.1566(b) (emphasis added).  The VE testimony more than fulfilled this requirement in specifying two occupations when the regulation only requires one.  The ALJ fully complied with the requirements of SSR 83-12 and did not err in basing the "not disabled" finding on two occupations.

V.      Compliance with SSR 00-4p

Allen contends the ALJ committed reversible error by failing to ask the vocational expert whether his testimony is consistent with the Dictionary of Occupational Titles ("DOT").  Allen argues there is an apparent conflict between the DOT and the VE testimony in that both jobs require frequent, repetitive use of the hands, which is beyond the residual functional capability assessed by the ALJ.

The Commissioner claims the ALJ only committed harmless error because there is no conflict between the vocational expert's testimony and the DOT.  Specifically, the Commissioner

Page 13 - OPINION AND ORDER

claims the two occupations the ALJ identified do not require more than frequent reaching or handling and are within Allen's residual functional capacity.

At the hearing, the ALJ gave the VE a hypothetical including this limitation: "The worker should not engage in any work regarding constant, repetitive use of the left upper extremity. Anything up to and including frequent is okay, but not constant and this hypothetical worker is left hand dominant." Tr. 44. In the opinion, the ALJ noted that Allen "should not do work that requires consistent, repetitive use of the upper left extremity." Tr. 17.

An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first asking if the testimony conflicts with the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007). The procedural error is harmless, however, if there is no conflict or if the VE provides sufficient support for his conclusion to justify any potential conflicts. Id. at 1154 n.19.

Allen refers to the conflict between the word "constant" in the hypothetical given to the VE and the word "consistent" in the ALJ's written opinion. He argues the "consistent" limitation conflicts with the DOT and triggers a remand under Massachi.

I disagree. In stating the hypothetical, the ALJ used the word "constant," which is a term of art in the DOT, as is the word "frequent." The ALJ adopted the VE's testimony which is based on the "constant" limitation and is in accord with the DOT. It appears that a typographical error crept into the opinion but I conclude that this is harmless error. Likewise, I conclude the ALJ's failure to ask the VE if the testimony conflicts with the DOT is harmless error because there is no conflict between the two.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards.  For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this      26th         day of January, 2012.


                                          /s/ Garr M. King
                                         Garr M. King
                                         United States District Judge